# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| Karen G. Saks, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Trans Union, LLC, | ) | **COMPLAINT** |
| | ) | **WITH JURY TRIAL DEMAND** |
| Defendant. | ) | |
| | ) | |

## PRELIMINARY STATEMENT

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S. Code § 1681, *et seq.* (the "FCRA") to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

2. Under the FCRA, consumer reporting agencies are charged with two primary duties: the duty to follow reasonable procedures to assure maximum possible accuracy of information when preparing consumer reports; and the duty to reasonably reinvestigate consumers' disputes of inaccurate information, and then appropriately correct or modify the disputed information. A consumer reporting

agency's duty to reasonably reinvestigate consumers' disputes of inaccurate information explicitly includes the duty to notify the furnisher of the disputed information. This is because the furnisher of the disputed information stands in a better position to make a thorough investigation of the disputed information than the credit reporting agency.

3. Defendant compiles, maintains, and reports information concerning Plaintiff's credit-worthiness, credit-standing, credit capacity, character, and general reputation. That information is then made available for use by third-parties in credit transactions involving Plaintiff, for employment purposes, the underwriting of insurance for Plaintiff, and even in connection with a determination of Plaintiff's eligibility for a license or other governmental benefit. Accordingly, and pursuant to various provisions of the FCRA, Plaintiff has a legally protected interest in Defendant fulfilling its respective duties under the FCRA, so that the information reported and maintained by Defendant is done so in a manner which is fair and equitable to Plaintiff, with regards to the confidentiality, accuracy, and relevancy of that information.

4. This action for damages is based on Defendant's false reporting on Plaintiff's credit files and/or consumer reports, failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning

Plaintiff, and failures to conduct reasonable investigations and reinvestigations with respect to disputes of such information.

## PARTIES

5. Plaintiff, Karen G. Saks, is a natural person who resides in Cherokee County, Georgia.

6. Plaintiff is an individual and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7. Defendant, Trans Union, LLC (hereinafter "TransUnion"), is a limited liability company formed under the laws of the State of Illinois and registered to do business in the State of Georgia. TransUnion may be served with process via its registered agent, Prentice-Hall Corporation Systems at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

8. TransUnion regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Accordingly, TransUnion is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over Plaintiff's Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, claims pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10. This Court has personal jurisdiction over Defendant pursuant to O.C.G.A. § 9-10-91(1) because, *inter alia*, Defendant frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

11. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

12. Pursuant to LR 3.1B(3), venue is proper in the Atlanta Division because Defendant maintain an agent for service of process within the Atlanta Division.

## ALLEGATIONS OF FACT

13. On or about June 15, 2016, Plaintiff obtained a residential home loan from Rocket Mortgage, Inc. ("Rocket") for the original principal amount of $146,310.00 (the "Mortgage").

14. On June 2, 2021, Plaintiff filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case Number 21-54223 (the "Bankruptcy Case").

15. Plaintiff continued to make his post-filing Mortgage payments to Rocket, and Rocket has continued to service Plaintiff's Mortgage and accept her post-filing Mortgage payments.

16. On or about February 4, 2022, Plaintiff obtained a copy of her consumer report as published by TransUnion.

17. That report contained erroneous information as provided by Rocket and as published and reported by TransUnion.

18. The Rocket Mortgage tradeline appearing in the February 4, 2022, TransUnion showed Plaintiff's mortgage had a balance of $0.

19. Plaintiff's Mortgage did not have a balance of $0.

20. The fact that Plaintiff's Mortgage with Rocket did not have a balance of $0 was objectively and readily verifiable information.

21. The Rocket tradeline appearing in the February 4, 2022, TransUnion report showed Plaintiff's mortgage had a monthly payment of $0.

22. Plaintiff's Mortgage did not have a monthly payment of $0.

23. The fact that Plaintiff's Mortgage with Rocket did not have a monthly payment of $0 was objectively and readily verifiable information.

24. The Rocket tradeline appearing in the February 4, 2022, TransUnion report showed Plaintiff's mortgage as closed.

25. Plaintiff's Mortgage was not closed.

26. The fact that Plaintiff's Mortgage with Rocket was not closed was objectively and readily verifiable information.

27. In a letter dated April 8, 2022, Plaintiff disputed the inaccurate and misleading factual discrepancies directly to TransUnion and advised TransUnion that her mortgage was not closed and did not have a balance of $0 and did not have a monthly payment of $0.

28. The dispute letter provided Defendant with sufficient information to identify and correct the inaccurate reporting.

29. In support of Plaintiff's dispute, and to assist Defendant's investigation reinvestigation, Plaintiff included with her dispute documents which showed the monthly payment on the Mortgage was not $0.

30. In support of Plaintiff's dispute, and to assist Defendant's investigation reinvestigation, Plaintiff included with her dispute documents which showed the balance on the Mortgage was not $0.

31. In support of Plaintiff's dispute, and to assist Defendant's investigation reinvestigation, Plaintiff included with her dispute documents which showed the Mortgage was not closed.

32. TransUnion did not respond to Plaintiff's first dispute.

33. Plaintiff resubmitted her dispute to TransUnion again on May 24, 2022.

34. TransUnion received Plaintiff's resubmitted dispute on May 31, 2022.

35. Pursuant to 15 U.S.C. § 1681i, TransUnion had a duty to notify Rocket of Plaintiff's dispute within five business days of receiving the dispute, to forward

the supporting documents submitted with Plaintiff's dispute for Rocket's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

36. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRA may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

37. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

38. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See *http://www.e-oscar.org/* (last accessed December 12, 2022).

39. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *Id*.

40. The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e-OSCAR.

41. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

42. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See *https://www.e-oscar.org/implementation/about-us* (last accessed December 12, 2022).

43. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

44. TransUnion requires data furnishers that report to TransUnion to register with and use e-OSCAR, and states that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See, *https://www.transunion.com/data-reporting/support-teams* (last accessed December 12, 2022).

45. TransUnion timely notified Rocket of Plaintiff's dispute via e-OSCAR and provided the supporting documents submitted with Plaintiff's dispute.

46. Rocket responded to TransUnion's ACDV on or about June 24, 2022.

47. Rocket responded to the ACDV with a correction to the tradeline which updated the balance to its correct current amount at that time, approximate $133,500.00.

48. Rocket responded to the ACDV with a correction to the tradeline which showed the correct monthly payment amount, $905.00.

49. Rocket was able to make the proper updates to the tradeline because the facts in dispute were objectively and readily verifiable.

50. TransUnion received the ACDV response from Rocket.

51. TransUnion did not update the account balance of Plaintiff's Mortgage on the Rocket tradeline in accordance with the information supplied by Rocket in its ACDV response.

52. TransUnion did not update the monthly payment amount of Plaintiff's Mortgage on the Rocket tradeline in accordance with the information supplied by Rocket in its ACDV response.

53. TransUnion did not update the Rocket Mortgage tradeline with all of the information provided by Rocket in its ACDV response.

54. TransUnion failed to update Plaintiff's credit file with the information provided by Rocket in its ACDV response.

55. TransUnion failed to update Plaintiff's credit report with the information provided by Rocket in its ACDV response.

56. TransUnion's internal procedures prevented TransUnion from updating the Rocket Mortgage tradeline with the information provided by Rocket in its ACDV response.

57. But for TransUnion's internal policies and procedures which prevented the Mortgage tradeline from being updated in accordance with Rocket's ACDV response, the Mortgage tradeline would have accurately stated the account balance on the Mortgage.

58. But for TransUnion's internal policies and procedures which prevented the Mortgage tradeline from being updated in accordance with Rocket's ACDV response, the Mortgage tradeline would have accurately stated the monthly payment on the Mortgage.

59. Plaintiff again accessed her Trans Union credit report on or about February of 2023.

60. TransUnion reproduced the errors identified by Plaintiff in her original dispute letter.

61. Specifically, the Rocket tradeline appeared in the revised January 2023 TransUnion report still showing the account as having a $0 balance and a $0 monthly payment.

62. Defendant's post-investigation reporting is false and misleading.

63. Defendant's post-investigation reporting is in derogation of the Metro 2 reporting standards, and that departure and failure to adhere to the adopted guidelines renders the reporting both false and materially misleading, as users of consumer reports assume Defendant's compliance with Metro 2 standards in reporting consumer information.

64. Defendant's post-investigation reporting artificially suppresses Plaintiff's credit score by failing to accurately report the balance, monthly payment, and status of the Mortgage.

65. But for Defendant's internal policies and procedures, Plaintiff's credit score would have been accurate.

66. Defendant published the inaccurate credit information to third parties.

67. The Eleventh Circuit held that the reporting of inaccurate information about a plaintiff's credit has "a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts." *Pedro v. Equifax. Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017).

## **INJURIES-IN-FACT**

68. Defendant's actions and omissions have caused Plaintiff to lose time attempting to correct the false information on Plaintiff's consumer reports.

69. The time spent by a person attempting to correct a false credit report constitutes a concrete injury for purposes of an FCRA claim. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at *5 (11th Cir. Nov. 12, 2019), citing Pedro v. Equifax, Inc., 868 F.3d 1275, 1280 (11th Cir. 2017).

70. Defendant's actions and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit scores and other credit rating model scores.

71. The adverse effect on Plaintiff's credit scores places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than he otherwise would.

72. Further, the Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *Pedro v. Equifax, Inc*., 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their

credit and been forced to pay Ocwen greater payments and a higher interest rate"); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *Binns v. Ocwen Loan Servicing, LLC*, No. 14-01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *Rothman v. U.S. Bank Nat'l Ass'n,* No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

73. Defendant's actions and omissions have resulted in the illegitimate suppression of Plaintiff's credit-based insurance scores.

74. The adverse effect on Plaintiff's credit-based insurance scores places Plaintiff at the material risk of being denied insurance or receiving less favorable insurance rates and terms than she otherwise would.

## DAMAGES

### Actual Damages

75. As a result of Defendant's actions and omissions, Plaintiff has suffered actual damages.

76. These damages include out-of-pocket expenses incurred as a result of Defendant's wrongful representations regarding the Mortgage, and Defendant's failures to abide by their obligations under the FCRA.

77. Plaintiff has suffered a decrease in Plaintiff's credit scores as a result of Defendant's wrongful representations regarding the Mortgage, and Defendant's failures to abide by their obligations under the FCRA.

78. Plaintiff has also experienced physical symptoms of aggravation, frustration, and stress due to the fact that Defendant is falsely suppressing Plaintiff's credit score, and reporting false credit information to third parties.

### Statutory and Punitive Damages

79. At the time Defendant reported the information at issue in this matter, Defendant had actual notice that the information it was reporting regarding Plaintiff and the Mortgage was false, deceptive, and misleading.

80. Defendant had more than enough information to correct its false, deceptive, and misleading reporting.

81. The Mortgage tradeline being reported on Plaintiff's credit report was objectively and readily verifiable as factually incorrect.

82. Despite that, Defendant continued to report the false, deceptive, and misleading information regarding Plaintiff and the Mortgage.

83. Defendant failed to correct its false, deceptive, and misleading reporting, and in fact continued to report false, deceptive, and misleading information regarding Plaintiff, as described herein.

84. Accordingly, Defendant's conduct was willful.

85. As a result of Defendant's willful actions and omissions, Plaintiff is eligible to recover actual damages or statutory damages of up to $1,000, potential punitive damages, costs of this action, and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

## CAUSE OF ACTION

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### (15 U.S.C. §§ 1681e(b) and 1681i)

### Trans Union, LLC

86. Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

87. Pursuant to 15 U.S.C. § 1681e(b), TransUnion is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports about Plaintiff.

88. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), TransUnion had an affirmative duty to independently investigate the dispute submitted by Plaintiff.

89. A reasonable reinvestigation clearly requires some degree of careful inquiry, and more than just a superficial inquiry.

90. The reasonableness of a reinvestigation under the FCRA is generally a question of fact for the jury.

91. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), TransUnion was required to review and consider all relevant information submitted by Plaintiff.

92. Plaintiff's dispute was clear and unambiguous as to the inaccuracies of TransUnion's reporting of the Mortgage.

93. Plaintiff provided all the relevant information necessary for TransUnion to conduct a reasonable reinvestigation, and correct the inaccuracies in its reporting.

94. TransUnion breached its duties as described herein.

95. If TransUnion had conducted a reasonable reinvestigation of Plaintiff's disputes, TransUnion would have reviewed and considered all of the information

Plaintiff submitted in his disputes, and would have easily detected that what was being reported regarding the Mortgage was factually incorrect, inaccurate, and misleading.

96. If TransUnion had conducted a reasonable reinvestigation of Plaintiff's dispute, the Rocket tradeline on Plaintiff's TransUnion consumer report would have been appropriately corrected.

97. Due to TransUnion's failures to follow reasonable procedures to assure maximum possible accuracy of information, and failures to conduct a reasonable reinvestigation of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's TransUnion report was not appropriately modified.

98. TransUnion had all the information necessary to correct its reporting. Despite that, TransUnion failed to correct the false, disputed information, in the face of clear evidence that its reporting was false and misleading. That failure indicates that TransUnion's reinvestigation procedures were not reasonable.

99. The fact that TransUnion had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that TransUnion recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

100. TransUnion has prepared consumer reports containing the incomplete and inaccurate information at issue, and has published the incomplete and inaccurate information to third parties.

101. TransUnion willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Plaintiff in his consumer reports, in reckless disregard of the statutory requirements, Plaintiff's dispute, and the ACDV response from Rocket.

102. As a result of TransUnion's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff has suffered actual damages as described herein. Plaintiff is, therefore, entitled to recover actual damages from TransUnion pursuant to 15 U.S.C. §§ 1681n and 1681o.

103. TransUnion's actions and omissions were willful, rendering TransUnion liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

104. Plaintiff is entitled to recover costs and attorneys' fees from TransUnion pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **TRIAL BY JURY**

105. Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered in his favor and against Defendant for:

    a)    Plaintiff's actual damages;

    b)    Statutory damages of $1,000 per violation of the FCRA pursuant to 15 U.S.C. § 1681n;

    c)    Punitive damages pursuant to 15 U.S.C. § 1681n;

    d)    Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o; and

    e)    Such other and further relief as may be just and proper.

Respectfully submitted this 27th day of December, 2023.

**BERRY & ASSOCIATES**

*/s/ Matt Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Fax (404) 235-3333

*/s/ Chris Armor*
Christopher N. Armor
Georgia Bar No. 614061
P.O. Box 509
Londonderry, Vermont 05148
Phone 651-208-6441
Fax 404-592-6102

chris.armor@armorlaw.com

*Plaintiff's Attorneys*